# LEVIN-EPSTEIN & ASSOCIATES, P.C.
_____
60 East 42nd Street. • Suite 4700 • New York, NY 10165
T: 212.792.0048 • E: Jason@levinepstein.com

July 8, 2024

<u>*Via ECF*</u>
The Hon. Marcia M. Henry, U.S.M.J.
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *Polo et al v. 40-66 Ithaca St. Owners Corp. et al*
        <u>**Case No.: 1:23-cv-05128-MMH**</u>

Dear Honorable Magistrate Judge Henry:

  This law firm represents Plaintiffs Edgar Polo and Ines Polo (together, the "Plaintiffs") in the above-referenced action. This letter is submitted jointly with Defendants 40-66 Ithaca St. Owners Corp., Pinnacle Group NY LLC (together, the "Corporate Defendants"), Joel Wiener, and Tal Sharon (collectively, the "Defendants").

  This joint letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) ("*Cheeks*"), with the consent and approval of the Defendants, seeking the Court's approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $75,000.00 and the dismissal of Plaintiffs' claims with Prejudice. The parties request that, upon your review and satisfaction that the settlement is fair and reasonable, and that the fees and costs are duly earned, Your Honor issue an Order approving the Settlement Agreement, attorneys' fees, and costs.

  A copy of the executed Settlement Agreement is attached hereto as Exhibit "A".

  A Stipulation of Dismissal with Prejudice is being filed simultaneously with this letter motion as Exhibit "B", and the parties respectfully request that the court So-Order the Stipulation.

  A true and correct copy of Plaintiffs' retainer agreement is annexed hereto as Exhibit "E".

  **I.**  **Procedural History**

  40-66 Ithaca St. Owners Corp. operates the residential property located at 40-66 Ithaca St., Elmhurst, NY 11373 (the "Ithaca St. Property"). According to the operative Complaint [Dckt. No. 1] (the "Complaint", or the "*Compl.*"), Defendants employed Mr. and Mrs. Polo as porters, handymen, and superintendents at the Ithaca St. Property from 1990 through and including the present date. Defendants deny Plaintiff Ines Polo's allegations and specifically deny that Ines Polo was employed by Defendants. [*See* Defendants' Answer, Dckt. 19].

  Plaintiffs' Complaint alleges that their responsibilities as superintendents included, *inter alia*: collecting garbage and recycling, hauling refuse bins to and from the curb, sweeping the sidewalk, cleaning the buildings' hallways and common areas, changing lightbulbs, maintaining

the buildings' appearance, communicating with tenants regarding repairs, painting, plumbing, purchasing supplies, repairing bathroom faucets and fixtures, repairing kitchen faucets and fixtures, repairing appliances, communicating with contractors and other building employees, shoveling snow, and generally serving as the first point of contact for resident service requests.

Plaintiffs alleged that they were required to be on call at or near the Ithaca St. Property, twenty-four (24) hours a day, seven (7) days per week, including holidays to address reoccurring emergent issues, such as lost keys, locked doors, electrical shortages, clogged toilets, leaks, and other issues that either the Defendants or tenants of the Ithaca St. Property would demand that Plaintiffs address. Defendants denied these allegations.

From approximately June 2017 through and including the present date, Defendants allegedly paid Mr. Polo a flat salary of $700 per week. Plaintiffs alleged that Defendants did not pay Mrs. Polo any wages, for her work from on or around 1990 through and including the present date.

The Complaint asserts eight (8) Causes of Action against Defendants.

FIRST: Unpaid minimum wages under the FLSA;

SECOND: Unpaid overtime wages under the FLSA;

THIRD: Unpaid minimum wages under the NYLL;

FOURTH: Unpaid overtime wages under the NYLL;

FIFTH: Unpaid spread-of-hours premiums under the NYLL;

SIXTH: Failure to provide wage notices under the NYLL and Wage Theft Prevention Act; and

SEVENTH: Failure to provide wage statements under the NYLL and Wage Theft Prevention Act.

EIGHTH: Failure to pay timely wages under the NYLL.

Defendants argue that Plaintiffs' causes of action are barred under the "janitorial exemption" provision of N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 141-1.2. Specifically, Defendants argue that the regulations "do not provide for either minimum wages or overtime wages for 'janitors,' who are instead paid based on the number of units in the building in which they worked." *Koljenovic v. Marx*, 999 F. Supp. 2d 396 , 401 (E.D.N.Y. 2014). Defendants provided discovery and further rely on time and payroll records, further evidencing the possibility of the "janitorial exemption", and undermining Plaintiffs' allegations of hours worked and payment received. Moreover, Defendants position is that Plaintiff Ines Polo was never employed by Defendants.

The parties appeared before court-appointed Mediator Michael Kreitman on February 12, 2024, March 19, 2024 and March 28, 2024. Following the March 28th Mediation, the parties reached a settlement in principle via a mediator's proposal to settle this matter for a total sum of $75,000.00 (the "Settlement Amount") to be paid out in accordance with the terms of the accompanying Settlement Agreement (Exhibit A).

The settlement is objectively fair, reasonable, and the product of arm's length negotiations between experienced counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

## II.   The Settlement Agreement is Fair and Reasonable.

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### A. The Settlement Sum is Substantial and Fair Given the Plaintiffs' Range of Recovery.

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiffs' proposed ultimate recovery represents approximately 50.10% of Plaintiffs' estimated maximum recovery for unpaid wages. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA Plaintiff's maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA Plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery).

The method and formula for the derivation of the Plaintiffs' reasonable range of recovery assumes the following:

3

(i) Plaintiff Edgar Polo worked, on average, seven (7) days a week, for approximately 6.43 hours per day, for a total period of approximately 45 hours during each of the weeks, respectively.

(ii) Plaintiff Edgar Polo was paid a flat salary of $700 per week.

(iii) Plaintiff Ines Polo worked, on average, five (5) days a week, for approximately 1 hour per day, for a total period of approximately 5 hours during each of the weeks, respectively.

(iv) Plaintiff Ines Polo was not paid any wages.

(v) Plaintiffs are not covered under the janitorial exemption.

Taking these assumptions into account, the undersigned computed that the alleged unpaid wages yielded the aggregate amount of $49,717.50. Plaintiffs' total damages, inclusive of liquidated damages, wage notice and wage statement penalties, and pre-judgment interest, totaled $149,715. The undersigned yielded this amount by subtracting Plaintiffs' assumed lawful wages, by Plaintiffs' paid wages. Defendants sharply dispute that Plaintiffs are owed any unpaid wages, and that deny that Defendants were Plaintiff Ines Polo's "employers", under the FLSA or NYLL.

The Settlement Agreement requires that Defendants pay a settlement sum in the amount of $75,000.00, to resolve the case.

Plaintiffs believe that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The parties engaged in informal discovery to address various issues related to liability, damages, and Defendants' ability to satisfy a judgment. Given the risks these issues presented, the Settlement Amount is reasonable.

On December 19, 2023, Defendants produced 558 individual pages of documents, consisting of, *inter alia*:

1. Two (2) individual pages of vacation request forms for 2022 and 2023;

2. 512 individual pages of timesheets, purportedly reflecting: (i) a summary of Mr. Polo's daily tasks, and (ii) hours worked, from January 4, 2021 to, through and including, July 6, 2023;

3. 73 individual pages of ADP records, purportedly reflecting: (i) Mr. Polo's weekly hours worked; and (ii) gross pay of $700;

On December 22, 2023, Defendants produced 755 individual pages of documents, consisting of, *inter alia*:

4

1. 775 individual pages of timesheets, purportedly reflecting: (i) a summary of Mr. Polo's daily tasks, and (ii) hours worked, from January 1, 2018 to, through and including, January 3, 2020.

### B. The Settlement Agreement Avoids the Incurrence of Additional Expenses.

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely, whether or not: (i) Plaintiff Edgar Polo is covered under the "janitorial exemption" provision of NYCRR tit. 12, § 141-1.2; (ii) Plaintiff Ines Polo was employed by Defendants; as well as (iii) the total number of hours worked by Plaintiffs.

If the trier of fact credited Defendants' positions, it would result in a diminished recovery. In fact, there is the possibility Plaintiffs would not be owed any wages. Proceeding to trial would consume significant amounts of time and resources, only for Plaintiffs to face the hurdles of trying to monetize a potentially uncollectible judgment.

The continued litigation of this case would necessitate no less than four (4) depositions, and a trial. It is also anticipated that there would be motions for summary judgment and motions *in limine*, as well as post-trial judgment appeals. The associated costs and the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### C. The Seriousness of the Litigation Risk Faced by Plaintiffs is High.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on the amount of hours allegedly worked, and the amount of alleged unpaid wages owed.

Defendants took the position that Plaintiff Edgar Polo was an exempt employee, and Plaintiff Ines Polo was never employed by Defendants, and that neither Plaintiffs are owed any wages.

As set forth above, Defendants' provided 1,313 pages of timesheets, ADP records, and other business records purportedly reflecting, *inter alia,* Plaintiff Edgar Polo's hours worked, tasks completed, and compensation received.

Plaintiffs, in order to succeed on the merits for this period, would have to rebut the proposition that they were exempt, and that they did not work any overtime. Where, as here, Defendants have produced some documentation of Plaintiffs' hours worked and compensation received, Plaintiffs' burden is high. *Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

5

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### D. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The settlement was the culmination of dozens of rounds of negotiations over the course of several months, including two (2) continued mediations on February 12, 2024 and March 19, 2024. The settlement was eventually reached following a third continued virtual mediation before Mediator Michael Kreitman on March 28, 2024, upon the parties' acceptance of a mediator's proposal.

The contested issues, and arms-length negotiation by counsel demonstrate there was no fraud or collusion. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiffs are satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Martinez Montoya v. Havana Central NY 2, LLC et al*, 2024 WL 871206 (S.D.N.Y. 2024) (successfully opposing motion to dismiss, and objections to Magistrate Judge's report and recommendation, on the standard for pleading willfulness under the FLSA); *Singh v. Lintech Electric, Inc*., 2022 WL 1422311, at *1 (E.D.N.Y. 2022), *report and recommendation adopted*, 2022 WL 2158748 (E.D.N.Y. 2022) (successfully opposing motion for leave to amend complaint, and securing over $15,000 in sanctions for discovery violations); *Arevalo Fajardo et al v. WB Maintenance & Design Group Inc. et al*., Case No.: 21-cv-5236 (E.D.N.Y. 2021) (securing preliminary injunction on behalf of a group of plaintiffs in an FLSA case where plaintiffs were retaliated on the basis of their immigration status, and assaulted); *Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiffs' counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA plaintiffs); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-

b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

### III. The Allocation for Attorneys' Fees and Costs is Reasonable.

Plaintiff bears the burden of proving the reasonableness of the fees sought. *See Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999). "Although courts may elect to award fees by considering either the lodestar method – the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended – or the percentage method – a percentage of the total amount recovered by the plaintiffs – '[t]he trend in [the Second] Circuit is toward the percentage method.'" *Perez v. Ultra Shine Car Wash, Inc*., 2021 WL 1964724, at *6 (S.D.N.Y. 2021) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005)). But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Id.* (citing *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Guareno v. Vincent Perito, Inc.*, 2014 WL 4953746, at *2 (S.D.N.Y. 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd*., 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012). Courts can and should exercise broad discretion in determining a reasonable fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008). In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. New York City Transit Auth*., 575 F.3d 170, 174-175 (2d Cir. 2009). Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190.

Plaintiffs respectfully recommends an hourly rate of $450 for the services of Joshua D. Levin-Epstein ("Mr. Levin-Epstein"), $350 for the services of Eunon Jason Mizrahi ("Mr. Mizrahi"), and $100 for the services of Alexis Abrego ("Ms. Abrego")[1].

A brief biography of each attorney and paralegal who performed billed work in this matter is set forth more fully below.

---

[1] A true and correct copy of Plaintiffs' counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as Exhibit "D".

### A. Joshua D. Levin-Epstein, Esq.

Mr. Levin-Epstein is the founder and managing member of Levin-Epstein & Associates, P.C., and has been in practice since 2006. Prior to founding the firm, Mr. Levin-Epstein was part of the Business Solutions, Governance, Restructuring & Bankruptcy practices at international and national law firms where he represented constituents in complex litigation and transactional matters. Mr. Levin-Epstein also served as Law Clerk to the Honorable Alan H.W. Shiff in the United States Bankruptcy Court for the District of Connecticut (Bridgeport Division). Mr. Levin-Epstein received a B.S. in Foreign Service from the Edmund A. Walsh School of Foreign Service at Georgetown University. At Georgetown University, Mr. Levin-Epstein received several merit-based scholarship awards. He received his J.D. from The University of Michigan Law School. Mr. Levin-Epstein previously chaired the Labor and Employment Subcommittee for the New York City Bar Association's Hospitality Law Committee. He authored a White Paper on the history of the development of local Community Boards in New York City.

### B. Eunon Jason Mizrahi, Esq.

Mr. Mizrahi earned his B.A. from the University of Maryland in 2012, where he majored in Persian studies and minored in Israeli and Middle Eastern studies. Mr. Mizrahi earned his J.D. from Brooklyn Law School in 2016. Following law school, Mr. Mizrahi served as in-house counsel and human resources manager for a wholesale baking company headquartered in the Bronx, with global operations in China, South Korea and the United States. He subsequently practiced as an associate at a boutique law firm concentrating in labor and employment law.

Mr. Mizrahi has worked as an associate at Levin-Epstein & Associates, P.C. since 2018, where has secured precedent-setting decisions in NYLL and FLSA actions. *See* § II(D), *supra.*

### C. Alexis Abrego

Ms. Abrego has worked as a paralegal at Levin-Epstein & Associates, P.C. from August 2018 to, through and including, approximately September 2023.

Ms. Abrego graduated from St. John's University in 2021 with a Bachelor of Science, where she majored in pre-law and minored in business. Ms. Abrego also graduated with a paralegal certificate in paralegal studies. Before attending St. John's University, Alexis worked as a paralegal for a Trusts and Estates firm for four (4) years, where she handled various client matters including preparing and drafting wills, trusts, affidavits, and acris deed transfers. Ms. Abrego also has extensive legal research experience assisting managing attorneys prepare for court. During this time, Ms. Abrego was also the assistant to a former speaker of the New York City Council, to a Queens councilman, and to a criminal court judge.

Other Courts have approved Mr. Levin-Epstein Mr. Mizrahi's, and Ms. Abrego's proffered billing rates. *See Dorson v. NYU Langone Hospital-Brooklyn,* Case No. 1:21-cv-04286-RER at

8

1/23/2023 Order (S.D.N.Y. 2023); *Christian v. MH Plumbing & Mechanical Corp. et al,* Case No. 1:22-cv-04774-BMC at Dckt. No. 21 at * 4 (E.D.N.Y. 2023); *Sims v. Crown Waste Corp. et al*, Case No. 1:22-cv-06047-BMC at Dckt. No. 23 at * 4 (E.D.N.Y. 2023); *Hernandez v. Yonkers Brewing Company LLC et al*, Case No. 7:21-cv-06951-PED at Dckt. No. 50 (S.D.N.Y. 2022); *Hoyos v. Milio et al,* Case No. 1:22-cv-01982-GWG at Dckt. No. 54 (S.D.N.Y. 2022); *Simmons v. Allied Universal Security Services, LLC et al*, Case No. 1:22-cv-03526-GHW at Dckt. No. 21 (S.D.N.Y. 2022); *Jones v. Questfleet LLC et al*, Case No. 1:21-cv-04042-TAM at 7/28/2022 Order (E.D.N.Y. 2022); *Stein v. Greenfeld et al,* Case No. 20-cv-01929-ARR-CLP, Dckt. No. 25 at *6-7 (E.D.N.Y. 2020); *Laureano-Capellan v. Chirichella et al,* Case No. 20-cv-00360-RER, July 15, 2020 Dckt. Entry (E.D.N.Y. 2020); *Feliciano v. Yoon et al,* Case No. 18-cv-06361-DLI-JO, March 27, 2020 Dckt. Entry (E.D.N.Y. 2020). Such fees are also within the range of reasonable rates for similarly experienced attorneys. *See Guerra v. Trece Corp.,* 2021 WL 1893593, at *2 (S.D.N.Y. 2021) (approving hourly rate of $450 for partner); *Meide Zhang v. Liang Zhang*, 2020 WL 9256464, at *6 (S.D.N.Y. 2020), *report and recommendation adopted as modified sub nom*. *Zhang v. Zhang*, 2021 WL 1154084 (S.D.N.Y. 2021) (approving $450 hourly rate as "reasonable"); *Salazar v. 203 Lena Inc.*, 2020 WL 5627118, at *11 (S.D.N.Y. 2020), *report and recommendation adopted,* 2020 WL 6257158 (S.D.N.Y. 2020) (recommending hourly rate of $500).

Applying the percentage method, Plaintiffs respectfully request an award of attorneys' fees in the amount of $24,258.87.

Plaintiffs further requests an award of $648.40 for costs incurred in filing fees ($402), service fees ($246.60) and mediation fees ($1,575.00). Proof of disbursements substantiating these fees are annexed hereto as Exhibit "C".

Based on this, the requested attorneys' fees and costs of should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

## IV.     The Agreement Satisfies All Other Factors Considered for Approval.

The terms of the Settlement Agreement, annexed hereto as Exhibit "A" is consistent with *Cheeks*. For example, the Settlement Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions.

The Settlement Agreement also contemplates Plaintiffs' voluntary vacatur from the Ithaca St. Property. In exchange for Plaintiffs' continued use and occupancy in the Ithaca St. Property, as specified in the Settlement Agreement, Plaintiffs are also extending a limited release, with respect to non-wage related claims arising out of Plaintiffs' tenancy at the Ithaca St. Property.

Plaintiffs and the undersigned believe that this is a reasonable, limited restriction necessary to implement the settlement. The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law and following months of negotiations, after multiple mediations, following the issuance of a mediator's proposal.

In sum, the settlement is fair and reasonable, providing Plaintiffs with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By: */s/ Jason Mizrahi*
Jason Mizrahi, Esq.
Joshua Levin Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
Tel. No.: (212) 792-0048
Email: Jason@levinepstein.com
*Attorneys for Plaintiffs*